case number 22-5258 Saline Parents an unincorporated association et al appellants v. Merrick B. Garland in his official capacity as Attorney General of the United States of America. Mr. Mews for the appellants, Mr. Freeman for the court, I'm Robert Mews. It's my honor and privilege to represent the plaintiffs appellants in this important constitutional challenge to a Department of Justice policy directive and I'll be reserving two minutes of my time for rebuttal. Plaintiffs have made plausible allegations of facts establishing each element of standing in light of the substantive claims that have been advanced. That is, plaintiffs are suffering an injury in fact that is fairly traceable to the actions of the Attorney General and that can be addressed by a court order. So like the challenger in Meese v. Keene, the plaintiffs are facing a Hobson's choice between foregoing protected activity, in this case it's speaking out at school board meetings, in opposition to certain policies and curricula. The very activity the Attorney General claims is threatening, harassing, and intimidating and suffering not only injury to their reputation as they are now deemed domestic terrorists and criminal threats for engaging in such activity but also subjecting themselves to federal investigation, surveillance, and record-keeping on account of this activity. And the facts in this case actually far more egregious than the Meese case. In that case Keene, who was the the challenger, he simply wanted to exhibit films that the government had labeled as political propaganda. No one was forcing him to show films, no one was preventing him from showing the film, no one was subjecting him to federal investigation and surveillance for showing the film. And the term itself, political propaganda, as the Supreme Court ultimately concluded, was rather innocuous. So there was nothing in the Meese case that regulated, constrained, or compelled any action on his part. And there was nothing that Keene intended to do, the showing of the film, that was prescribed by any law. It was nothing. Yet the US Supreme Court found that he had standing despite ultimately ruling against him on the merits. But also, and I want to highlight in this, this court's decision in Fortich versus the United States, and I believe the opinion... Mr. Meese, the appellants here say that they are not planning to undertake any unlawful activities, right? That they are simply planning to to speak out on issues of importance to them. And the Department of Justice has said that it doesn't plan to enforce, you know, that doesn't plan to take any kind of enforcement actions against people who are exercising their free speech rights. So how does that meet the standard for pre-enforcement review, which is a pretty high standard to meet? Well, Your Honor, the existence of this policy directive, and he's not rescinded it, he's not recanted it, it's quite threatening. And recall, remember as well, that the pretext really for this policy was that letter by the NS, the allegations, the complaint made clear, was drafted in collusion with, and specifically as a pretext for, this particular policy. And quite frankly, the attack on the targeting of the parents is very much what the purpose and effect of this was, so they could silence their speech, right? You're creating this conundrum, right? We're saying, look, this policy was drafted to silence the speech of these parents, which is constitutionally protected, and they don't have any business even meddling in the matters of... What policy, counsel? I'm missing it. I can't find any policy. We see policies all the time, and if it were only a policy, it wouldn't be reviewable, but I don't even see a policy. What's the policy? It's a directive by the Department of Justice... Wait, wait, wait, let's be very precise. Sure. You're making some really extraordinary claims. Are you using the word directive now, or is it a policy? Which is it, as a legal matter, that you are asserting? Your Honor, a policy can be a directive. A position taken by the Department of Justice... No, under the APA, a policy is, if you understand APA law, is something that's not even reviewable. Is that what you're talking about? Something like that? No, Your Honor, I'm talking about the Department of Justice taking... And a directive is something different under APA notions. It's more like a rule, so I'm curious as to what you think you're asserting. What is it you're asserting? Right. It's not... We don't have an APA claim involved here at all. I know. Conceptually, I'm trying to understand, because this case law, standing case law, that makes it clear that you haven't asserted enough, layered in other such cases, you haven't asserted enough to show standing. So I'm trying to understand what it is you think the government has done... It has directed... In a reviewable policy or directive, however you want to put it. Sure. It's directed his law enforcement authorities, the FBI in particular, and two divisions of the FBI, the criminal division and the counterterrorism division, to create these threat tags to conduct surveillance and investigation of parents who are engaging in constitutionally protected activity. Is that what the memo... Wait, Counsel, wait one second. Is that what the memo says? Your Honor, it's not just the memo. Is that what the memo says? Counsel, just answer him, because I really am trying to understand. Is that what... You just asserted something that was rather extraordinary. Is that what's in the memo? I don't remember. Maybe I'm looking at the wrong record. That's not what the memo says. Your Honor, the memo says, quote, the department takes these incidents seriously and is committed to using its authority and resources to discourage these threats, identifying when they occur, and prosecute them when appropriate. Consistent with this, and a FBI whistleblower provided to Congress, and we cited it in our complaint as well, an email of the FBI criminal division and counterterrorism division taking this directive and creating those threat tags for individuals to conduct this investigation. Why would the criminal division and the counterterrorism division create threat tags if not the reasonable inference from all these facts is that the Department of Justice, the Attorney General, considers these parents who are engaging in their constitutionally protected activity are not domestic terrorists or criminal threats? What is in the Attorney General's memo that focuses on these parents, as you call them? How are the accounts in any way focused on? It's a memo that suggests that there may be an issue. We're not talking about protected First Amendment activity. That's not our concern. We're concerned about unprotected activity, and we want to see what's there. How do you have standing to challenge that? Well, this is not a Laird v. Tatum, which just had merely subjective chilling effect. It's a practical effect. Laird v. Tatum dealt with the Department of Defense surveillance program. Department of Defense doesn't have authority to enforce criminal law. Not only was this subjective chill on the parents, but also the injury to their reputation. Now, remember, Judge, in a case that you decided, Fortich, you wrote that opinion, and there there was no, and consistent with Keene, it was a challenge to the Elizabeth Morgan Act, and the court made the point that case law, and this is almost a direct quote, that when reputational injury derives directly from an unexpired and unretracted government action, the injury satisfies the requirement of Article III. And you went on to point that even though the act did not directly mention Dr. Fortich or his child, his reputation and standing was harmed in the community by, and this was the language you used, effectively branding him a child abuser and unfit parent. Here the AG is effectively branding plaintiffs, domestic terrorists, and criminals. Reputation, and we even cited, and just the numerous news stories that makes the point that why is the Attorney General targeting parents as domestic terrorists? You're stating a conclusion that your papers don't support. Fortich is quite different. It was very focused on an individual, and it was the clear connection between what the government was reporting to do, and the individual was raising the claim. There is no clear connection here. There absolutely is, Judge, and you have to ignore the facts. Look at the facts of 75 through 78 that we allege with this connection between the NSBA and the Attorney General to create the pretext for this particular policy to fire a shot across the bow of parents who are complaining about school board meetings. You'd have to ignore the allegations in the complaint to reach that conclusion or parse them out separately. We haven't alleged that the October 4 memorandum is the sum of all this policy directive. You have other aspects of this, including the email that the whistleblower disclosed to Congress, and I'm well over my time, and I'd like to reserve some of my time. Mr. Mews, I have a question relating to standing. Even if we were to assume for the sake of argument that you have an injury here from this memo, how is that injury imminent here? I guess another way of asking that is, why is your harm ripe in this case? Because it's possible, maybe, to read the Attorney General's memorandum as covering speech that is constitutionally protected and using the word harassment. However, the Department of Justice has said that it does not plan to enforce against just pure speech. How is the injury imminent or ripe in this case? Thank you, Ronnie. Yes, certainly that shot's been fired across the bow, but the reputational injury component, if it doesn't demand, there was nothing that was imminent in the Meese v. Keene or Fortich, where the government has this labeling of individuals, and Meese is even more to the point in the fact that it had a chilling effect on his ability to engage in speech. There was no imminent enforcement. That's why I went through the point about why reputational injury and harm, it doesn't require some actual enforcement. In the threat of investigations themselves, we've cited tons of cases, Clark, Gibson, and so on. The threat of investigation itself has a chilling effect that creates this here and now subservience to the government, and it's that chilling effect that the courts need to be concerned about. So you assert that your clients have been labeled domestic terrorists by this policy, and from what I could tell, the mention of the word domestic terrorism was in a letter from a different organization, the NSBA. How is that attributable to the Attorney General? Like we've alleged multiple facts in the complaint, Your Honor, that NSBA letter was drafted in collusion with the Biden administration and the Department of Justice to create the pretext for this issuance of the policy directive, however you want to define it, in the October 4th memorandum. And pause and just think about this in terms of whether or not it's a reasonable inference to draw that there's a designation, the government's imprimatur or endorsement of this domestic terrorism label. One is, again, you had the collusion between the Department of Justice and the Department of Justice. That's what we've alleged in the complaint. In fact, it's come out in the House Judiciary Committee. The facts in the complaint are the facts that we're dealing with here. We've missed them. Tell us again. I really don't know what you're talking about. You can read paragraphs 74 through 79 in the complaint that's at joint appendix pages 20 and 21. And we specifically allege that the NSBA letter was drafted in cooperation in conjunction with the Biden administration in order to create the pretext for the AG policy. That is a factual statement. And that's as, and I'm reading it directly. I'm sorry. I'm sorry. Wouldn't you have to support that conclusion with actual facts? Like there was a meeting at which they met and wrote this letter just saying that they colluded. Is that sufficient here? Well, in addition to the look at the paragraph 75. And quite frankly, it is. Because we have notice pleading still under Rule 8, despite Iqbal and Twombly. That is a statement of fact that the court has to accept is true. You can't just take a statement of fact, say we don't believe it's true, and then claim it a conclusory statement or a threadbare recital. It's a statement of fact that we will ultimately prove. And we have a series of other facts that are- Actually, in your instance, the statement of conclusion, you're drawing from facts that don't support it. And you're stating the conclusion, which you think is favorable. And that's exactly what Iqbal says you can't do. No, with all due respect, Your Honor, that's a statement of fact. It's not a legal conclusion. It's a statement of fact. And again, I'd ask you to look at all those paragraphs, 74 through 78 in particular on those pages. Just because you might not agree with the facts, doesn't mean you can dismiss the facts at this stage. Now we're going to have the burden of having to prove them. But we're here because they dismissed the complaint at the pleading stage. You have to accept these facts as true. And that's a statement of fact. It's not a legal conclusion. And it has to be accepted as true. And then what is the business? What is businesses the attorney general have to begin with local school board meetings? There's no federal jurisdiction for that. You can't investigate that which you don't have subject matter jurisdiction over. And you have the criminal division and the counterterrorism, terrorism vision actually involved in this. And you're not seeing how that there's this reasonable- Your argument in this case, just I'm trying to understand, your argument is anyone in the country who's part of a group that opposes things that are being done in the public schools or any schools, and they are put themselves in a protest category. Anyone in the country who is in that kind of a group can read this memorandum and say, we are threatened and we can sue and block it. You're right. I wouldn't go necessarily that broadly because we have specific plaintiffs, particularly- Can you answer that for me? Because I'm trying to understand the reach of your theory. You're suggesting that you've listed two particular groups here. But as I read you and hear your argument, you're suggesting that anyone who subscribes to the views that are supported by the opponents has standing to come in and challenge the memorandum that was circulated by the Attorney General. Is that right? No, I'm saying I've brought this complaint on behalf of specific plaintiffs who have specific standing. The remedy, the redress for the harm would certainly inure to the benefit of a lot of people, right? Courts have said time and again, it's in the public interest to protect First Amendment rights. And so certainly it would inure to the benefit of others who find themselves in the same position. But certainly five of the plaintiffs are from Loudoun County, which was the epicenter of this entire controversy. So our standing is for these individuals. The remedy you may grant in this case, a court ultimately, will certainly inure to the benefit to a much larger group, as is typically the case when you're protecting constitutional rights. It might take one more minute just to get your response on this because it leaves out as so straightforwardly clear to me in any event as someone who is responsible for thinking about the law on my side of these cases, how is this right? It seems to me U.S. v. Texas, among other cases, is absolutely clear that no matter how offended you may feel, this is not something, as Justice Scalia said, where the court ought to be speculating about what the government may or may not do when they haven't taken any action, they've disclaimed any connection with terrorism, as you say. It's not a ripe case. And we can decide on those grounds now. Right. I disagree. Obviously, as I mentioned in the case Meese v. Keene, when you have a reputational injury, this sort of imminence of enforcement, but also there's nothing that's the attorney general refused to retract. Mr. Meese, can you please connect the ripeness question to your First Amendment-alleged harm, to the chilling of your speech and reputational harm? Your Honor, the reputational harm and injury is part of the chilling. They're related. They're related, but they're also distinct. Meese v. Keene was an issue of First Amendment protection dealing with any enforcement action, but with injury. This shot's already been fired. It was fired on the October 4th. And we know that the FBI is currently doing investigations under this EDU officials threat tag. This program exists right now. And the attorney general, like I mentioned, you probably may or may not have saw the testimony, even on Wednesday, he refused to rescind the October 4th memorandum and what he's planning on doing with his Department of Justice. This is here and now. Nothing's been recanted. Nothing's been rescinded. And it's like what Judge Edwards said in the Fortich case, case law is clear that where reputational injury derives directly from an unexpired and unretracted government action, this is government action, that injury satisfies the requirements of Article 3. And the requirements of Article 3 are not only but also rightness. So we believe we have standing to advance this challenge based on the effects alleged in our First Amendment complaint. Thank you, Mr. Meese. We'll give you a couple minutes for rebuttal. Thank you. Good morning, Your Honor. May it please the Court, Mark Freeman for the Attorney General. For all the reasons given in Judge Friedrich's excellent opinion below, we think this case was quite properly dismissed for lack of a judicial controversy. Happy to address any questions the Court may have. Mr. Freeman, I am interested in this question of whether this is conceptually better viewed as a question of no Article 3 standing or no Article 3 ripeness, or if you think that matters. So obviously it doesn't matter the ultimate disposition under 12B1. Also, as the Court is aware, in pre-enforcement challenges, concepts of ripeness and standing tend to overlap. You can either think of it as the plaintiff has no imminent actual injury now, such that there's a concrete and particularized harm that needs to be addressed by the Court standing lens, or you can think of it as if something's going to happen to this plaintiff warranting judicial intervention, it hasn't happened yet. It may not happen in the United States in the way that plaintiffs predict, or it may not happen at all. Both of those are appropriate ways to look at this. Here we are looking at this, and the District Court looked at this as a pre-enforcement standing inquiry in the way of SBA list in the Supreme Court, and just the juxtaposition between the sort of facts that were at issue in SBA list, where you had a specific plaintiff who wanted to make a specific statement and had been threatened by the Ohio Commission, in that case under the Ohio statute that was at issue with the prosecution, and then when the case went forward, they were threatened again, and the Supreme Court said, here you have a plaintiff who has conduct that is inflected with a First Amendment interest, that has colorably alleged that their conduct is proscribed by the thing that they challenge, and indeed, they had been prosecuted by the State of Ohio for it, and furthermore, they face a threat, a realistic imminent threat of prosecution, and there the Supreme Court stressed that the Ohio agency had already directly threatened those plaintiffs. Then in those circumstances, the high bar for a pre-enforcement challenge, and here we have nothing like it. Mr. Freeman, do you think, so if the Department of Justice were to take enforcement actions against speech that was purely harassing in some sense, and unconnected to any actual threat, would that be a constitutional problem? So let me answer that in a couple ways. I mean, first, I realize it's not the court's question, but there's no allegation in the complaint that plaintiffs intend to do anything that would constitute harassment. Indeed, they made clear in their- Is a vociferous parent at a meeting, is that harassment or is that free speech? I mean, the memorandum mostly is connected to threats, but there is some language that's a bit loose about whether it might include something that somebody might think is harassment. Right, so let me address that. The memorandum is concerned with violence and the threats of violence, and read as a whole, I understand the court's point about the language of but I think just first, read as a whole, it is clearly concerned with unlawful criminal threats and threat to school board officials. The memorandum refers repeatedly, this is just it, this is page two of the Supplemental Joint Appendix, to crimes, to protecting public officials for fear for their safety, for criminal conduct directed at school personnel. I mean, this is about violations of law. And specifically with respect to harassment and intimidation, the Attorney General is referring to there is a small number of federal crimes that use the phrase intimidation and harassment in connection with speech that is not protected by the First Amendment, in the sense of Virginia versus Black, for example. I'm thinking, for example, of 18 U.S.C. 2261 A, that's intimidation or harassment using the wires or the mails to put a person in fear of bodily harm. So, for example, if you, if someone called in a bomb threat to a school board meeting in another state, that could state a violation of federal law. That's the sort of intimidation and harassment we're talking about. And you know, I understand that that's my- Is the government saying it is only intimidation and harassment that is linked to a specific federal crime that is not protected by the First Amendment? Yes, the Attorney General has, and I can be clear today, the Attorney General has been very clear every time he's been asked about this. When parents want to protest and vociferously protest the curricular choices of their local school boards, of course that's protected by the First Amendment. And the second, very second sentence of this memorandum says, spirited debate of this kind is protected by the Constitution. What the Attorney General was saying here was that threats of violence to public officials, that's a different question, and that's the distinction drawn in the second sentence. And that was the concern of the Department of Justice, not parents who object to what their school boards are teaching. So the standard applied in Susan B. Anthony is whether something arguably is proscribed. And given the loose language in this memo that talks about harassment and intimidation, isn't it arguable that conduct such as shouting and singing at meetings that cuts other people off is harassing or intimidating, or leaving all your shoes to, I guess, intimidate? It could be school administrators saying we're all going to leave your school. I just think that given that the standard is kind of loose, arguably proscribed, and the language here is kind of loose, harass or intimidate, it's not clear to me that that alternative ground that Judge Friedrich relied upon is necessarily correct. So I appreciate that. Let me address that in a couple of ways. First, for the reasons I've explained, I think reading the memo as a whole, what it's concerned about is violence and the threat of violence. And I think when anyone reading this memorandum would understand that that's what the alternative is. But we're in the land of arguably. I understand. And then secondly, these plaintiffs don't allege that there's any reason to believe that this conduct is focused on them. We're talking here, as to Judge Edwards' question, there's nothing in this case suggesting any reason why these six plaintiffs are differently situated than any other parents who object to what their school boards. That seems to be a different issue, like who they are compared to what they did, and whether what they do or did arguably could be proscribed by this policy. Right. So Judge Friedrich said two things. She said first, as to this arguably proscribed piece of SPLH. She said two things. First, she said there's nothing in this memorandum that prohibits anything. The memorandum doesn't establish any course of any rule of conduct. It doesn't prohibit anything. It's an internal memorandum. So that's point one. And point two. And then she said, if it did. If it did, right. But it's very, I mean, this is a memorandum from the subject line to the very end. That is a statement by the attorney general that threats to public officials are of concern to the Department of Justice, and the one concrete thing it does is direct that the U.S. Attorney's Office and FBI meet with state and local prosecutors. That's what the memorandum does. And Judge Friedrich, I think, quite rightly read this to say, this is not prohibiting anything. But if you thought it did, then you still have to deal with the fact for standing purposes that these plaintiffs are no differently situated than any other plaintiff. I don't think that was her alternative holding. I read her to be saying, if it did prescribe conduct, it wouldn't prescribe these parents conduct because they're just protesting in a lawful manner. They're not alleging that they're breaking the law. Yes, but I think we need to look at their. This is highly hypothetical. Of course, she's saying it doesn't prescribe anything. But if it did, it would prescribe, I guess, harassing and intimidating conduct that they're not engaging in. But I just think it's unclear under an arguably prescribed standard that shouting and singing the national anthem to cut other people off isn't harassing or intimidating. Well, I hear the court. And if that's how the court views it, then I think there's several other ways to affirm the district court here. One is the reason Judge Edwards was noting previously, there's no indication that these six particular plaintiffs are any differently situated than any other parent. I get that. That wasn't what I was asking. No, I agree. And then the second point is that just on the SBA list, while we're talking the SBA list standard, remember, the SBA list is three steps. And the first, everyone agrees they've alleged that they want to engage in conduct protected by the First Amendment. No protest there. The second was this arguably prescribed question. And the third was alleged specific facts supporting a concrete, imminent risk of enforcement. And there's no such demonstration. Mr. Freeman, do you think that a memorandum such as the Attorney General's memorandum here can ever be subject to judicial review? I mean, I think it'd be very difficult. This is an internal memorandum. And if you imagine that this were a speech that the Attorney General gave that said, we're very worried about threats of violence against public officials, that's a bad thing in our democracy. And I want everyone who works for me to be attentive to ways that the FBI or the Department of Justice can bring its resources to bear to prevent those. I mean, agency officials say that kind of thing all the time. You would need to have something very concrete and specific. And I'm not asking the court to write anything categorical. You don't need to write anything categorical. But pre-enforcement challenges are a rare animal in courts for good reasons. And when the courts permit pre-enforcement challenges to anything, pre-enforcement here is a little strange because we don't think there's anything to enforce. But when courts permit plaintiffs who have not been made the subject of any government conduct to come in and nonetheless ask for a constitutional adjudication, we require quite a lot. I think if you just read the SBA list, where this court's cases like Ream or Woodhull Freedom Foundation, this court insists on quite a lot before you find that there's a concrete controversy warranting an article of pre-adjudication. Let me come back to what Judge Rao, and this has bothered me from the moment I started reading this. I don't know how you get around writings here. Texas, the plaintiff, the state, was clear and identified potential enforcee. And their claim was, they're going to come get us. Justice Scalia said, but they haven't done anything yet. And when they do, then we'll talk to you. And you can even come to court very quickly if they do something. Is your instinct that in analyzing the case, it's better to focus that way or on the standing? As you know, we've briefed ripeness in the alternative, and these concepts really do blur in the context of pre-enforcement challenges. I think it's perfectly legitimate to think of it as a ripeness problem. And in some ways, more natural. The normal way that judicial review proceeds, of course, is something happens to a person, and they have a concrete controversy, in fact, in law, and they ask the courts for relief. And here, I have no, zero reason to expect that anything would ever happen to a plaintiff who is exercising First Amendment rights like this, that the FBI or the Department of Justice would have anything to do with it. But if, God forbid, something like that happened, you would want to know. The district court would want to know precisely what the plaintiffs did and precisely what the FBI did before you pronounced and applied the Constitution to reach a result in that case. And that's the ripeness concern. Because right now, we're just in the air, in the abstract. We don't know. Unless the court has any further questions. Mr. Mews? The ripeness issue, as we know from the case law, ripeness is more loosely relaxed in the First Amendment context. And we know from Supreme Court cases, Dombrowski v. FISTA, for example, the threat of sanctions may deter just as much as the actual enforcement of sanctions. Now, this idea that somehow this is some innocuous internal memo is absurd on its face, because this was released with great public fanfare by the Attorney General himself, clearly as a shot across the bow of parents who are making noise at these school board meetings. And really think about the context of this as well, as we kind of outlined a little bit in the complaint. This is right when the governor's race in Virginia, parental rights became a big, a very big and strong issue. And it's not just, and this is the point that we've made the point arguing, one of the errors of the district court was to parse each of these facts as if this memo is the only government action. We know from the email from the criminal division of the FBI and the counterterrorism division of the FBI, that the FBI is actually taking action. We have government action that is focused on a concern that doesn't even exist. It was pretext. It was created by this NSBA. There is no widespread domestic terrorism at school board meetings. All there is, is widespread public opposition to policies that this administration particularly favors. When you read this, it's a mistake to pull out each one of these facts as a separate tile, rather than looking at the entire mosaic. When you have this directive from the attorney general, the head law enforcement officer, using the FBI, firing this warning shot against parents, designate them as domestic terrorists and criminal threats. It's the only basis for them having jurisdiction. You not only have an injury to reputation, you also have this chilling effect on freedom of speech. That gives them standing and the case is right because it's
judges: Rao, Pan, Edwards